**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| CHAMBERS OF<br>TIMOTHY J. SULLIVAN<br>UNITED STATES MAGISTRATE JUDGE | 6500 Cherrywood Lane<br>Greenbelt, Maryland 20770<br>Telephone: (301) 344-3593 |

September 29, 2022

LETTER TO COUNSEL:

      RE:    *Sharmaine W. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
              Civil No. TJS-21-2716

Dear Counsel:

      On October 21, 2021, Plaintiff Sharmaine W. petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 12 & 13. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both motions and remand the case for further proceedings. This letter explains my rationale.

      Sharmaine W. filed her application for DIB on March 3, 2019. Tr. 15. She alleged a disability onset date of March 3, 2018. *Id.* Her application was denied initially and upon reconsideration. *Id.* At her request, a hearing was held before an Administrative Law Judge ("ALJ") on May 4, 2021. Tr. 38-77. In a written decision dated May 25, 2021, the ALJ found that Sharmaine W. was not disabled under the Social Security Act. Tr. 15-31. The Appeals Council denied Sharmaine W.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-6.

      The ALJ evaluated Sharmaine W.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Sharmaine W. had not engaged in substantial gainful activity since March 3, 2018, the alleged onset date. Tr. 17. At step two, the ALJ found that Sharmaine W. suffered from the following severe impairments: neuropathy, cirrhosis, degenerative disc disease of the cervical spine status post fusion, degenerative disc disease of the lumbar spine, cervical and lumbar radiculopathy, left carpal tunnel syndrome, anxiety disorder, and depressive disorder. *Id.* At step three, the ALJ found Sharmaine W.'s impairments, separately and in combination, failed to meet or equal in severity any listed

---

[1] This case was previously assigned to other judges. It was reassigned to me on July 29, 2022.

impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 18. The ALJ determined that Sharmaine W. retains the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) with the ability to lift and/or carry up to 10 pounds She can stand and/or walk for up to two hours total in an 8-hour workday and for up to 30 minutes at a time. She must be allowed to use a cane while standing and/or walking. She can occasionally perform pushing and pulling motions with the upper and lower extremities, such as operating levers, hand controls, pedals and foot controls. She can occasionally balance, stoop, kneel, crouch, use ramps and climb stairs. She must avoid crawling and climbing on ladders, ropes or scaffolding. She can tolerate occasional exposure to vibrations. She must avoid wet or slippery conditions and other workplace hazards, such as unprotected heights and dangerous, moving machinery. She can perform jobs that would take no more than 30 days of training to learn with a specific vocational preparation level of two or less, which are generally classified as unskilled. She can perform jobs that would be considered "low stress," in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting.

Tr. 24.

At step four, the ALJ determined that Sharmaine W. cannot perform past relevant work. Tr. 30. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Sharmaine W. can perform, including ticket counter, charge account clerk, and order clerk. Tr. 31. Accordingly, the ALJ found that Sharmaine W. was not disabled under the Social Security Act. *Id.*

Sharmaine W. presents three arguments in her appeal: (1) the ALJ improperly evaluated a medical source opinion and inadequately explained the reasons for rejecting the medical source opinion; (2) the ALJ did not properly account for the claimant's mental limitations in the RFC; and, (3) the ALJ did not properly consider the claimant's subjective complaints. *See* ECF No. 12-1.

Sharmaine W.'s first argument is that the ALJ failed to properly evaluate the medical source opinion rendered by her treating physician, Pio Poblete, M.D. ECF No. 12-1 at 18-26. For claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ considers medical opinions and prior administrative medical findings using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with other evidence in the claim, and understanding of the disability program's policies and evidentiary requirements. *Id.* §§ 404.1520c(c), 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion. *Id.* §§ 404.1520c(a), 416.920c(a).  The ALJ is not required to explain

the consideration of the other three factors. Id. §§ 404.1520c(b) 416.920c(b). And the ALJ need not articulate how he or she considered each opinion or finding. *Id.*

Dr. Poblete completed a Medical Source Statement for Sharmaine W. on January 11, 2021. Tr. 1949-51. According to this statement, Dr. Poblete has treated Sharmaine W. since January 2007. Tr. 1951. He diagnosed her with peripheral neuropathy and cervical and lumbar stenosis and stated that she has a poor prognosis. Tr. 1949. According to his statement, Sharmaine W. would need to elevate her legs on a frequent basis during the workday, and could only walk for five minutes at a time and stand for ten. *Id.* As for sitting, Sharmaine W. could sit for 60 minutes at a time but for no more than 4 hours total in an 8-hour workday. *Id.* Dr. Poblete stated that Sharmaine could never lift any significant weight (including items weighing less than 10 pounds), and could only use her hands, fingers, and arms 25% of the workday. Tr. 1950. Sharmaine W. would be absent from work more than four times a month due to her impairments. *Id.* Dr. Poblete noted that Sharmaine W. has "constant nerve pain in legs and feet," constantly loses balance, cannot drive due to pain, experiences numbness in her feet and has back pain that is acute and ongoing. *Id.* He stated that she had all these physical limitations since March 2018. Tr. 1951.

The ALJ rejected Dr. Poblete's medical opinion. Tr. 29. He explained:

> The record simply does not support the significant sitting, standing and walking limitations. The evidence also does not support the claimant only being able to use her upper extremities 25% of the time, or her being absent from work so frequently. Dr. Poblete's own treatment notes show that at an exam in February 2020, the claimant with limited range of motion in the neck, but no motor deficits in the upper extremities, and her reflexes were 2+ bilaterally. At an exam in March 2020, it shows she had no edema (Exhibit 25F). She manages her own personal care, and she cares for her disabled adult son, she cooks, cleans, does laundry, shops online, uses public transportation, enjoys listening to music, reading and watching television, albeit all with limitations (Exhibit 4E, 8F, Hearing Testimony). The record supports the claimant is not so extremely limited and she could perform sedentary work as outlined in the RFC above.

*Id.*

The ALJ's discussion of two of Dr. Poblete's treatment notes is appropriate, as that evidence goes to the supportability of Dr. Poblete's medical opinion. But the ALJ failed to address other evidence in Dr. Poblete's treatment notes, which appears to be support Dr. Poblete's opinion. For instance, while the ALJ correctly noted that in February 2020, Sharmaine W. presented with no motor deficits in the upper extremities, she did present with "ongoing pain in the arms, hands, and legs" two months later, in April 2020. Tr. 1927 (also noting an "ongoing deterioration of the areas above and below the [cervical] fusion"). The ALJ did not address this evidence, which tends to support Dr. Poblete's opinion. In addition, as Sharmaine W. notes, evidence in the record shows that Dr. Poblete acted as a coordinator of specialist care for Sharmaine W. ECF No. 12-1 at 20. Dr. Poblete's frequent referrals of Sharmaine W. to specialists for higher levels of care also tends to support Dr. Poblete's restrictive opinion about Sharmaine W.'s functional limitations. The same is true for Dr. Poblete's documentation of Sharmaine W.'s worsening neuropathy. *Id.*

The ALJ also failed to sufficiently explain how Dr. Poblete's opinion conflicted with other evidence in the record. While the ALJ's consideration of Sharmaine W.'s activities of daily living was warranted, the discussion was too limited to logically justify the ALJ's conclusion that the activities of daily living were inconsistent with Dr. Poblete's opinion. Sharmaine W.'s ability to listen to music, shop online, read, and watch television have no bearing on the physical limitations in Dr. Poblete's opinion. And as for Sharmaine W.'s caretaking of her disabled adult son, the record reveals little about Sharmaine W.'s activities in this respect. According to psychiatric records, Sharmaine W.'s son has "poorly functioning Autism" and attended a day care program until COVID-19 social distancing measures required him to remain at home with his family (an apparently unsustainable situation that made Sharmaine W. feel "very overwhelmed all the time"). Tr. 1980. Sharmaine W.'s son "loves to be on the computer all day" and requires little engagement from his mother. *Id.* Sharmaine W.'s function report indicates that she helps her son with his morning and evening routine, but says nothing about what that entails. Tr. 281. As for Sharmaine W.'s other activities, which the ALJ summarized generally as cooking, cleaning, laundry, and personal care—the record reveals that Sharmaine W.'s activities in these areas are extremely limited. She can make simple meals like peanut butter and jelly or ham sandwiches, eggs, salads, pasta with sauce, and microwavable food; these meals take between 5 and 15 minutes to prepare. Tr. 282. Sharmaine W. spends about 10-15 minutes cleaning her kitchen and doing laundry every few days. *Id.* She does not drive or use public transportation because of the numbness in her feet. Tr. 283. Although it is not the function of this Court to reweigh the evidence, the ALJ's reliance on these activities of daily living—as limited as they are—to show an inconsistency with Dr. Poblete's opinion does not withstand even slight scrutiny. Perhaps the ALJ overemphasized simple tasks that do not really reflect Sharmaine W.'s ability to perform work. Or perhaps the ALJ just inadequately explained why he considered the evidence to be inconsistent with Dr. Poblete's opinion. Either way, the Court cannot conclude that the ALJ's evaluation of Dr. Poblete's opinion complies with the governing legal standards and is supported by substantial evidence. The Court will remand this case for further explanation on this basis.

The Court declines to address Sharmaine W.'s remaining arguments and expresses no opinion on the ultimate issue of her disability.

For these reasons, both parties' motions for summary judgment (ECF Nos. 12 & 13) are **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g). the Acting Commissioner's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. The Clerk is directed to **CLOSE** this case.

Sincerely yours,

    /s/
Timothy J. Sullivan
United States Magistrate Judge